UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **DAVID R. JACKSON** | * | **CIVIL ACTION NO. 17-0286**<br>Section P |
| **VERSUS** | * | **JUDGE ELIZABETH E. FOOTE** |
| **KEITH BLACKMAN, ET AL.** | * | **MAG. JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the District Court, is a motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 3] filed by defendant, Union Parish Policy Jury. The motion is unopposed. For reasons set forth below, it is recommended that the motion to dismiss be GRANTED.

### Background

On February 16, 2016, at around 2:00 p.m., Sterlington Police Officer James Stires observed a vehicle (later determined to be operated by David R. Jackson) pass by Sterlington High School. Stires activated his emergency lights, thus signaling for Jackson to pull over. Instead, Jackson, who had a handgun in a backpack and a bag of marijuana in the car, opted to flee. As he drove away, Jackson removed the handgun from the backpack so he could dispose of it. Before he could do so, however, Union Parish Sheriff deputies deployed a spike strip, thereby stopping Jackson's car. Jackson alighted from the car, with his hands up, while holding the gun skyward. Nonetheless, Union Parish Sheriff deputies Harrison Nolan, Ken Slocum, and Keith Blackman proceeded to discharge a combined total of sixteen bullets, with ten of them striking Jackson in the back. The deputies then handcuffed and beat Jackson with their fists and at least one blunt object. As Jackson lay on the ground, Union Parish Sheriff deputy Ben Thomas

stripped him naked.  The deputies did not provide any immediate medical care to Jackson.  In due course, EMS arrived and transported Jackson to the hospital.  After six days, Jackson was released into the custody of the Union Parish Detention Center, which lacked the requisite medical staff and facilities to care for his medical issues.  As a result, Jackson suffered permanent and disabling injuries to his right arm.

On February 17, 2017, Jackson filed the instant, four-count civil rights complaint pursuant to 42 U.S.C. § 1983 against Union Parish Sheriff deputies, Keith Blackman, Ken Slocum, Harrison Nolan, Ben Thomas, and Tim Payne; Union Parish Sheriff Dusty Gates; the Union Parish Sheriff's Office ("UPSO"), and the Union Parish Police Jury ("UPPJ").  Count I sets forth a Fourth Amendment excessive force claim against deputies Blackman, Nolan, and Slocum.  Count II alleges a denial of medical care claim under the Fourteenth Amendment against Blackman, Nolan, Slocum, Thomas, Payne, the UPSO, and the UPPJ.  Count III advances a supervisory liability claim against Sheriff Gates under the Fourth and Fourteenth Amendments.  Finally, Count IV specifies a municipal liability claim against the UPSO and the UPPJ.  Jackson seeks to recover compensatory and punitive damages, equitable relief, a declaratory judgment, discretionary damages, attorney's fees, costs, and interest.

On February 24, 2017, the UPPJ filed the instant motion to dismiss for failure to state a claim upon which relief can be granted.  Plaintiff did not file a response, and the time to do so has lapsed.  *See* Notice of Motion Setting [doc. # 4].  Thus, the motion is deemed unopposed.  *Id*.

## Analysis

**I.**     **Standard of Review**

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).  A pleading states a claim for relief, *inter alia*, when it contains a "short and plain statement . . . showing that the pleader is

entitled to relief . . ." Fed.R.Civ.P. 8(a)(2). Circumstances constituting fraud or mistake, however, must be alleged with particularity. Fed.R.Civ.P. 9(b).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between. *See Iqbal, supra*. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965. Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark, supra*.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. (citation omitted). A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly, supra*. Nevertheless, a court is compelled to dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)

(citation omitted). However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Id*.

## II. Discussion

Plaintiff alleges that the UPPJ is the governing body of Union Parish, and that it owns and operates the sheriff's office. (Compl., ¶ 11). Furthermore, the UPPJ "employed" the sheriff's deputies who acted pursuant to policies, practices, and customs adopted or ratified by, inter alia, the UPPJ. *Id*. Jackson also alleges that the UPPJ failed or refused to provide the necessary level of medical care for his wounds while he was at the Union Parish Detention Center. *Id*., ¶ 42. He states that the UPPJ and the UPSO maintain policies, practices, and customs which were the "moving force" behind Jackson's constitutional deprivations. *Id*., ¶ 77. Finally, plaintiff alleges that Sheriff Gates was the policymaker for UPPJ. *Id*., ¶ 78.

A local government entity or municipality cannot be held liable under § 1983 by virtue of the doctrine of respondeat superior. *O'Quinn v. Manuel*, 773 F.2d 605, 608 (5th Cir.1985). Rather, to impose § 1983 liability against a government entity for the misconduct of one of its employees or officers, plaintiff must demonstrate that the constitutional deprivation was caused by a policy or custom of the entity. *Kohler v. Englade*, 470 F.3d 1104, 1115 (5th Cir. 2006) (citing *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 690-691, 98 S.Ct. 2018, 2036 (1978)). Specifically, a plaintiff must identify (a) a policymaker, (b) an official policy or custom or widespread practice, and (c) a violation of constitutional rights whose "moving force" is the policy or custom. *Monell*, 436 U.S. at 694.[1] "In a Section 1983 case, the burden of proving the

---

[1] For purposes of *Monell* liability, "[t]he final policymaker is the official or body upon whom state or local law has conferred the power to adopt rules governing the conduct of the entity's employees; merely granting an employee discretionary authority does not make the employee a final policymaker." *Lee v. Morial*, No. 99-2952, 2000 WL 726882, at *2 (E.D. La.

existence of an unconstitutional municipal policy or established custom rests upon the plaintiff." *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989).

The Fifth Circuit has recognized that municipalities or supervisors may face liability under § 1983 where they breach duties imposed by state or local law. *O'Quinn, supra* (citations omitted); *see also Salvagio v. Doe*, No. 13-5182, 2013 WL 6623921, at *2–3 (E.D. La. Dec. 16, 2013) (state law determines whether a particular governmental entity has an obligation or policymaking authority). In Louisiana, the sheriff in his official capacity is the appropriate governmental entity on which to place responsibility for the torts of a deputy sheriff. *See Burge v. Parish of St. Tammany*, 187 F.3d 452, 469 (5th Cir. 1999).[2] Moreover, "a parish sheriff occupies a constitutional office which exists and functions independently of the governing body of the parish." *Broussard v. Boudoin*, No. 03-3040, 2004 WL 223984, at *1 (E.D. La. Jan. 29, 2004) (citing La. Const. art. 5, § 27 and La. Const. art. 6, §§ 5(G) and 7(B)). Therefore, plaintiff's conclusory allegation notwithstanding, a parish governing body cannot be liable vicariously or pursuant to *Monell* for the acts of the sheriff or his (or her) deputies. *Foster v. Hampton*, 352 So.2d 197, 203 (La. 1977) (no vicarious liability against the parish); *Broussard, supra* (no vicarious or *Monell* liability against the parish); *Kraft v. Lee*, No. 06-2846, 2006 WL 3395592, at *3 (E.D. La. Nov. 22, 2006) (no vicarious or *Monell* liability against the parish); *Quatrevingt v. Thibodeaux*, No. 10-4047, 2011 WL 2182104, at *2 (E.D. La. May 2, 2011), *R&R adopted*, 2011 WL 2182069 (E.D. La. June 2, 2011) (plaintiff's allegation that parish was the

---

June 2, 2000).

[2] Courts uniformly hold that sheriff's *offices* or sheriff's *departments* (as opposed to the sheriff him or herself) are not juridical entities capable of being sued. *Sipes v. City of Monroe*, No. 11-1668, 2013 WL 1282457, at *3 (W.D. La. Mar. 28, 2013) (collecting cases).

employer of the sheriff and his deputies was incorrect under Louisiana law).

While the foregoing authority plainly suffices to preclude plaintiff's claims against the UPPJ arising out of the deputies' alleged excessive use of force and failure to provide adequate medical care at the scene of the arrest, plaintiff's claim for constitutionally inadequate medical at the Union Parish Detention Center presents a closer question.

By law, the sheriff is charged with operating the parish jail and ensuring that the inmates receive proper care. *Oladipupo v. Austin*, 104 F. Supp.2d 626, 641 (W.D. La. 2000) (citing La. R.S. § 15:704); *Langley v. City of Monroe*, 582 So.2d 367, 368 (La. App. 2d Cir. 1991) (citations omitted). However, the *parish* is responsible for financing and physically maintaining the jail. *Salvagio, supra*; *see also O'QUINN, supra*; *Fairley v. Stalder*, 294 Fed. Appx. 805, 812 (5th Cir.2008) ("day-to-day operation of the parish prison is the responsibility of the local sheriff, and that financing and maintenance are the responsibility of the local governing authority"). Furthermore, the parish is responsible for either appointing a physician or contracting with a health care provider to attend to prisoners who are confined in parish jails. *See Thompson v. Ackal*, No. 15-2288, 2016 WL 1371192, at *4–5 (W.D. La. Feb. 2, 2016), R&R adopted, 2016 WL 1370597 (W.D. La. Apr. 5, 2016). Thus, the parish is responsible for all expenses of providing medical treatment to prisoners. *O'QUINN, supra* (citing *Amiss v. Dumas*, 411 So.2d 1137, 1141 (La. App.1st Cir. 1982); *Arce v. Louisiana*, No. 16-14003, 2016 WL 7407223, at *4 (E.D. La. Dec. 22, 2016) (to the extent the jail's deficiencies are attributable solely to a lack of adequate funding, the parish's obligation to fund the jail could be implicated and the parish might be held responsible).

Having said that, the instant complaint is devoid of any facts (as opposed to conclusory

allegations) to support a finding that the inadequate medical care plaintiff purportedly received at the Union Parish Detention Center was the result of under-funding or a *particular* policy enacted by the UPPJ. Therefore, as it stands, the complaint fails to state a claim for relief. *See O'Quinn*, 773 F.2d at 609-610.

Ordinarily, the court should accord plaintiff the opportunity to amend his complaint to state a claim for relief. However, because the instant motion disposes of less than all claims and parties, it is not a final judgment and remains subject to revision at any time before conclusion of the case. Fed.R.Civ.P. 54(b). Under these circumstances, especially given the lack of opposition by plaintiff, the better practice is to grant the motion to dismiss, subject to plaintiff's ability to seek leave to amend his complaint and revisit the issue – if and when he uncovers facts sufficient to support a viable § 1983 claim against the UPPJ.[3]

## Conclusion

As instructed by *Iqbal*, the court accords no weight to plaintiff's conclusory allegations in his complaint. *See Iqbal, supra*. Plaintiff's remaining allegations contain no facts sufficient to confer plausibility upon his claim for local governing body liability under § 1983. *Id*.; *see also City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148 (5th Cir. 2010).

For the above-assigned reasons,

IT IS RECOMMENDED that the Union Parish Policy Jury's motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 3] be GRANTED, and that plaintiff's claims against said defendant be DISMISSED, with prejudice. Fed. R. Civ. P. 12(b)(6).

---

[3] It goes without saying that plaintiff may not dither in his efforts.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 29th day of March 2017.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE